[Civ. No. 28289.   Second Dist., Div Four.   Nov. 18, 1964.]

Estate of KELLY ANTHONY, Deceased. G. HAROLD JANEWAY, as Executor, etc., Petitioner and Respondent, v. CATHERINE J. MacINNES, Objector and Appellant; WILLIAM WEBER SMITH et al., Beneficiaries and Respondents.

Earl E. Howard and Charles F. Howard for Objector and Appellant.

W. Alan Thody for Petitioner and Respondent and Beneficiaries and Respondents.

BURKE, P. J.—The probate court overruled objections to the final account of the executor of the Estate of Kelly Anthony, Deceased, which objections were presented by Catherine J. MacInnes, one of the legatees of the decedent; the final account was settled and a decree of final distribution was entered. Catherine J. MacInnes appeals from such order settling the final account and from the decree of final distribution.

In 1950, about 10 years before his death, the decedent created an *inter vivos* trust with a bank, in which he retained the right to amend or revoke the trust, and in which he placed assets having a value of $237,132.49 at the date of his death. Later he executed an amendment to the trust, dated September 19, 1956, which provided in part as follows:

"(a) There is hereby conferred on the Trustor the absolute power to appoint the trust estate by last will and testament. Any residuary clause in Trustor's Will shall be deemed an exercise of this power unless said Will shall otherwise expressly provide. If Trustor shall leave a Will exercising the power, the Trustee hereunder shall pay over and distribute

the trust estate in such manner as Trustor shall have designated and appointed in and by said Will, and the appointed assets shall not become a part of Trustor's probate estate unless Trustor shall have specifically so directed in his Will. . . ."

The decedent executed a holographic will, dated October 11, 1957, in which he bequeathed appellant the sum of $25,000, and "all the balance of my estate, to William Weber Smith and to his children in equal shares."

On October 30, 1957, he executed a codicil to his will which provided in part:

"FIRST: I hereby confirm the provisions of my Will of date October 11, 1957, which was entirely dated and written and signed in my own handwriting and voluntarily executed by me. It was and is my intention thereby and hereby to exercise the power of appointment reserved to me in Declaration of Trust #B-1577 at Security First National Bank of Los Angeles."

On February 19, 1960, he executed a second codicil which read in part as follows:

"For reasons I deem sufficient, I hereby reduce by $10,000, each, the legacies of $25,000, each, created by the First Codicil of date, October 30, 1957, in favor of Bruce Richards Raney and John Michael Hope; that is from $25,000, each, to $15,000, each. These reductions aggregating $20,000, I hereby add to the legacy in favor of Catherine Jean MacInnis Hutchinson, created by my Will of October 11, 1957."

On August 17, 1960, he executed a third codicil providing for certain burial instructions.

Finally, on November 4, 1961, 55 days prior to his death on December 31, 1961, he executed a fourth codicil which, because of its importance to these proceedings, is set forth verbatim as follows:

"FOURTH CODICIL TO
LAST WILL AND TESTAMENT
OF
KELLY ANTHONY

"This is a Fourth Codicil to my Will of date October 11, 1957.

MAC INNES KA[1]

"My good friend and nurse, CATHERINE J. McInnis, has during the past several years not only given me devoted care,

---

[1]Correction and initials appear on original document.

but from time to time from her personal funds has advanced me moneys for my personal expenses in a substantial aggregate amount.

"Accordingly, I direct my Executor, should said CATH-MAC INNES KA[2]

ERINE J. M̶c̶I̶n̶n̶i̶s̶ survive me, to repay to her during the administration of my estate the aggregate amount of any of such advances made by her; and, in addition I further direct that the legacies in her favor created by my said Will of October 11, 1957 and the Second Codicil thereto of date February 19, 1960 are hereby to be increased so that the total amount to be received by her from my estate, should she survive me, (including repayment of the aforesaid advances) shall aggregate the sum of One Hundred Thousand Dollars ($100,000.00) in cash or securities of a corresponding appraised value, provided, however, that the total amount so to be received by her shall not exceed twenty per cent (20%) of the total net value of my estate available for distribution after payment of Federal estate taxes upon or from my estate.

"In all other respects, I hereby republish and confirm my said Will of October 11, 1957, the First Codicil thereto of date October 30, 1957, the Second Codicil thereto of date February 19, 1960, and the Third Codicil thereto of date August 17, 1960.

"In WITNESS WHEREOF, I have hereunto set my hand to this Fourth Codicil this 4 day of November, 1961.

"KELLY ANTHONY

"KELLY ANTHONY"

(Attestation of witnesses follows.)

Each codicil republished and confirmed the holographic will and each of the earlier codicils.

At the date of death, decedent owned property, other than the property placed in trust, appraised in the administration of the probate estate in the sum of $351,995.71, the aggregate value of decedent's gross taxable estate, including the assets of the trust, being $589,128.20. On this gross amount[3] federal estate taxes in the sum of $120,874.34 were paid. The amount of $70,806.91 was purportedly payable to the State of California as inheritance taxes, the executor paying same and receiving a credit of $2,289.47 for early payment. Expenses

---

[2]Correction and initials appear on original document.

[3]Less costs of administration and creditors' claims.

of administration[4] amounted to approximately $60,600. In his final account and petition for distribution, the executor alleged that the net amount distributable to appellant was $39,126.21, computed on the basis of 20 per cent of decedent's probate estate only. The account stated:

"No proration of Federal estate and California inheritance taxes is required as between this estate and Trust P-1577 because of the fact that the residuary beneficiaries of the estate and of Trust P-1577 are identical beneficiaries in the same percentages. However, in this connection, reference is made to Schedule D hereto."

All of the taxes, both federal and state, were paid out of the probate estate.

Appellant contends that her legacy should have been computed upon the net value, after payment of the federal tax, of both the probate estate and the trust estate. In its findings of fact, after hearing on the objections filed, the trial court held that the decedent "did not by his will and the several codicils thereto (particularly the Fourth Codicil) thereby provide that said Catherine J. MacInnes should participate in his Private Trust No. P-1577 at Security-First National Bank of Los Angeles or share in the assets thereof."

The trial court further found: ". . . [T]his Court has no jurisdiction over said *inter vivos* trust established by the testator more than 10 years prior to the execution of his said Fourth Codicil."

The trial court then found that the federal tax should be prorated between the probate estate and the *inter vivos* trust, and further found that the share to be borne by the probate estate should be prorated among the several beneficiaries under decedent's will and codicils.

Now, paradoxically, appellant contends that the probate court did not have jurisdiction to determine the question presented by her objections in the manner so found by the trial court, namely, that she was *not* entitled to share in the trust assets; that such a finding is contradictory to the finding that the court had no jurisdiction over such trust; that payment out of such trust is ordered by the terms of the trust when decedent has exercised by will a power of appointment; that payment out of such trust of the legacy bequeathed to her is unnecessary in any event, but can be made out of the probate estate even if its *amount* is computed upon the basis of 20 per cent of both the trust and probate estates after

---

[4]Inclusive of creditors' claims.

payment of federal taxes; that the trial court's construction of the will and codicils was therefore erroneous; that there should be no proration of the federal taxes to apply against her legacy after its amount was already determined by subtraction of such taxes.

The issue is raised by both parties hereto regarding the jurisdiction of the superior court, sitting in probate, over *inter vivos* trusts. However, neither the general equitable powers of such court, which may be invoked in proper cases, nor the question of whether, in the instant case, all indispensable parties were before the court to justify the exercise of such equitable jurisdiction, need be considered. The case here is properly resolved by the interpretation of the decedent's will requiring distribution without recourse to the corpus of the trust estate. Reference to the trust is necessary only to determine how much of the assets of the probate estate is to be distributed to appellant under the terms of the will and codicils. Appellant may share in the assets of the probate estate in the full amount of the legacy bequeathed her under what we consider to be the proper method of computing such legacy to carry out the intent of the testator. In other respects the trust may be disregarded except, as indicated, to assist the court in the mathematical computation of appellant's legacy.

The question depends upon the interpretation of the word "estate" as used in the fourth codicil to the will of decedent. Did the decedent intend to refer simply to his probate estate or to his taxable estate by the use of such word?

In the *Estate of Armstrong,* 56 Cal.2d 796 [17 Cal.Rptr. 138, 366 P.2d 490], the term was construed to mean all property included for federal tax purposes, and includes an *inter vivos* trust as well as probate properties in the state. Obviously, the assets of a trust are a part of decedent's estate as defined by section 977 of the Probate Code specifically making federal taxability a part of the definition of "estate." In the instant case the fourth codicil limits the legacy payable to appellant to "20% of the total net value of my estate available for distribution after payment of *Federal taxes upon or from my estate."* That the decedent intended to refer to all of his property, including the trust, is further evidenced by his use of the words "my estate" in the residuary clause of his will wherein he left "all the balance of *my estate,* to William Weber Smith of Beverly Hills and to his children in equal shares." The trust agreement provides for the

application of appointment by will completely disposing of the trust estate, and the trial court so construed the residuary clause by which not only the probate estate property but the trust assets were distributable to the residuary beneficiaries, the Webers. Since the residuary beneficiaries of the trust are identical with those of the probate estate it makes no difference to such beneficiaries if the amount payable to appellant were paid from the trust, from the probate estate, or from both the trust and probate estate. The net amount received by each beneficiary will be the same. This, of course, is a mere coincidence. Nevertheless, as stated, it is unnecessary to determine that the codicils operated as exercising the power of appointment reserved.

The will and codicils of decedent should have been construed by the trial court to require the calculation of appellant's legacy to be based upon the combined trust and probate estates under the terms of the fourth codicil by which the legacy to appellant was stated to be ". . . increased so that the total amount to be received by her (including repayment of the aforesaid advances) shall aggregate the sum of One Hundred Thousand Dollars ($100,000.00) in cash or securities. . . ." This legacy in a definite amount was limited by the qualification that it was not to exceed 20 per cent of decedent's estate.

A reasonable interpretation of the will and all the codicils indicates that the testator did not intend that the legacy to appellant should be *decreased* unless an intervening diminution in the decedent's "estate" should occur between the date of the execution of the fourth codicil and the testator's demise. Since only 55 days intervened this did not occur. It is assumed that the competency of the testator was unquestioned as nothing appears in the record to the contrary. Accordingly, it can be inferred that, at the time the fourth codicil was executed, the testator knew generally the condition of his affairs. This is corroborated by the fact that the 20 per cent limitation set by him approximates the $100,000 he bequeathed to appellant when based upon his entire estate, including the trust, which amounted to $589,000. In the fourth codicil the clearly stated intent of the testator was to *increase* the $45,000 bequest, provided for appellant in the second codicil, to $100,000. But the interpretation given the instruments by the trial court has the reverse effect. It would result in a *decrease* of the bequest in the second codicil, $45,000, to $39,126.21, the amount stated in the decree of distribution.

In the case of *Reed* v. *Hollister*, 44 Cal.App. 533 [186 P.

819], an analogous, factual situation was presented. There, by the terms of her will, the testatrix left specific legacies amounting to approximately $38,000. At the date of her death, her probate estate amounted to $1,673. However, the testatrix was also the donee of a power of appointment under the will of her husband who predeceased her. The value of the assets held in the trust amounted to $39,014.57. The court held that a construction that the testatrix had intended to exercise the power of appointment by her will was indicated because of the mathematics involved, and because it was clear that, unless the court determined that the specific legacies were the objects of the power of appointment, the testatrix' intentions would have been defeated.

Appellant, here, contends that the trial court erred in directing the amount of the federal estate taxes be prorated among the appellant and the residuary beneficiaries. The appellate courts, in construing section 970 of the Probate Code which provides for proration, have held that it is not necessary that the testator expressly direct that the taxes are not to be prorated among interested beneficiaries if it otherwise appears from the will that it was his intention that no proration be made. (*Estate of Hotaling,* 74 Cal.App.2d 898 [170 P.2d 111]; *Estate of Pearson,* 90 Cal.App.2d 436 [203 P.2d 52]; *Estate of Allen,* 125 Cal.App.2d 502 [270 P.2d 510].) In *Allen, supra,* for example, the court held that the testator's manifest intention that the beneficiaries were to receive an equal amount of the testator's estate precluded proration where proration would have produced a different result.

Here, the testator directed that the federal taxes be paid "from my estate" *before* computing whether the intended $100,000 bequest would exceed 20 per cent of the total net value of the estate, in which event the bequest would be reduced to the 20 per cent figure. However, in its computation the trial court charged her with her pro rata share of such taxes. This we deem to have been error. The bequest to appellant is to be free of federal taxes.

Further, we likewise consider that the state inheritance tax applicable to appellant's distributive interest was intended by the testator to be paid by "his estate" in view of the wording of the will that "the total amount *to be received by her* from my estate, . . . shall aggregate the sum of One Hundred Thousand Dollars ($100,000.00)." The following limitation, that such amount should "not exceed

twenty per cent (20%) of the *total net value of my estate available for distribution* after payment of Federal estate taxes upon or from my estate'' (italics added) must be interpreted to mean 20 per cent of the balance of the testator's gross estate after deduction of federal taxes, claims and costs of administration, but *before* deduction of state inheritance taxes, as such inheritance taxes could not be computed without first determining the amount distributable to appellant. The question then remains whether such inheritance taxes should be chargeable to appellant or borne by the estate. It is apparent that the testator desired appellant to receive $100,000. The net taxable probate estate according to the record here is $291,402.14; the net taxable trust estate is $236,895.36; the entire taxable estate therefore is $528,297. Deducting federal taxes ($120,856.90) plus claims and costs ($60,600), a total of $181,456, leaves a ''net available for distribution'' in the sum of $346,841. Appellant's legacy may not exceed 20 per cent of this amount, and accordingly is the sum of $69,368. We conclude the inheritance taxes payable on appellant's legacy must be borne by the estate; first, because specific legacies are to be preferred to residuary legacies and, secondly, because such interpretation accords with the testator's obvious intentions that appellant's legacy should be increased to approximate $100,000. Since this is impossible the more reasonable interpretation of the will precludes any charge against her legacy for inheritance taxes. Such taxes must be borne by the estate. Similarly no proration of the federal taxes against appellant's distributive interest is allowable for the reasons hereinabove indicated. The figures here used are approximate, but indicate the manner of computation required.

The order settling the final account and the decree of final distribution is vacated and the cause remanded to the trial court with directions to modify such order and decree in accordance with this opinion.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied December 2, 1964, and the petition of all respondents for a hearing by the Supreme Court was denied January 13, 1965. Burke, J., did not participate therein.